**NIPPON SHOSEN KAISHA, K.K., a corporation, Libelant and Cross-Respondent,**

v.

**The UNITED STATES of America, Respondent and Cross-Libelant.**

**The TOKIO MARINE AND FIRE INSURANCE COMPANY, Limited, a corporation, the Sumitomo Marine & Fire Insurance Co., Ltd., a corporation, the Nippon Fire & Marine Insurance Company, Limited, a corporation, Westchester Fire Insurance Company, a corporation, and Marubeni-Iida (America), a corporation, Libelants,**

v.

**The UNITED STATES of America, Respondent.**

**Petition of NIPPON SHOSEN KAISHA, K.K., a corporation, owner of the vessel S.S. KOKOKU MARU, for exoneration from or limitation of liability.**

**Nos. 28865, 28873, 28889.**

United States District Court
N. D. California, S. D.

Jan. 8, 1964.

Graham, James & Rolph, San Francisco, Cal., for libelants in Nos. 28865 and 28889.

Cecil Poole, U. S. Atty., San Francisco, Cal., for respondents in Nos. 28865 and 28873.

McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for libelant in No. 28873.

McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for respondent in No. 28889.

SWEIGERT, District Judge.

The issue before the Court is whether the moving party, petitioner Sumitomo Marine and Fire Insurance Co., Ltd., a Japanese insurance corporation (hereafter referred to as Sumitomo), is entitled to the sum of $12,467.76, presently in the registry of the Court, which represents proceeds from the sale by a Court-appointed trustee of cargo consisting of 2,702.5 tons of phosphate rock.

Sumitomo's petition, filed September 12, 1963, alleges in substance that said phosphate rock cargo was shipped aboard the vessel SS Kokoku Maru; that Sumitomo insured said cargo and by reason of said insurance has paid the consignee-owner the full value thereof; that the phosphate rock cargo remained aboard the Kokoku Maru up to July 19, 1963, when the Court issued its Order Confirming Sale of the Kokoku Maru and the phosphate rock cargo for the sum of $72,567.76, which has been paid into the registry of the Court, of which sum $12,-467.76 is allocable to said cargo; and that Sumitomo has all right, title and interest in and to the sum of $12,467.76 and is entitled to said sum, subject only to certain liens.

The case originally arose under the Court's Admiralty jurisdiction upon the filing on July 8, 1963, of a Petition for Exoneration from or Limitation of Liability by Nippon Shosen Kaisha, K.K., a Japanese corporation (hereafter referred to as Shipowner), under the Shipowners' Limited Liability Act, 46 U.S.C. § 181 et seq.

The petition of Shipowner, so far as applicable to the issue at bar, alleges that it was the owner of the SS Kokoku Maru, a steam turbine vessel, which, after departing from the Port of San Francisco, California, bound for the Port of Yokohama, Japan, in the course of a certain voyage, came into collision with the USS Asterion, a cargo vessel operated as a public vessel of the United States of America, approximately five miles southerly of Point Reyes off the coast of California in the Pacific Ocean. The petition alleges that by virtue of said collision and damages resulting therefrom it became necessary to abandon the SS Kokoku Maru and to terminate its voyage on June 13, 1963.

On July 19, 1963, the Court entered its Order Confirming Sale, ordering the Court-appointed Trustee, Arimori, acting on behalf of all legally-entitled claimants, to execute, upon receipt of the balance due on the sale of the vessel and phosphate rock cargo, bills of sale transferring said vessel and cargo to Schnitzer Steel Products Co., an Oregon corporation which submitted the highest bid.

Sumitomo contends that the proceeds representing the sale of the cargo of phosphate rock, presently in the registry of the Court as part of the limitation fund to be available to all legally-entitled claimants, are not properly part of said limitation fund under the Shipowners' Limited Liability Act, 46 U.S.C. § 183, contending that that section refers only to the value of the owner's "interest" in the vessel and her pending freight.

However, it is not necessary to determine this question, which also involves the claims of Shipowner and claimants to the phosphate rock cargo proceeds, as the Court is of the opinion that Sumitomo is not entitled to the proceeds for the phosphate rock cargo because the uncontradicted evidence conclusively shows that both Sumitomo and its insured abandoned said phosphate rock cargo.

The Trustee's Notice of Ship Sale invited sealed bids for the steamship Kokoku Maru "with bunkers *and cargo* (emphasis added) as is without warranty or representation now lying afloat in damaged condition at Pier 40, San Francisco, California.

"Cargo consists of 2702.5 tons of Phosphate Rock, more or less." (Exhibit A, Claimant United States' Memorandum, filed October 1, 1963).

According to the affidavit, filed October 4, 1963, of W. H. Chick, an officer of Lloyd's Agency Department, agents for the moving party Sumitomo, and the exhibits attached thereto, the cargo at issue came to be included in the Trustee's Notice of Ship Sale in the following manner:

On June 14, 1963, ten days following the collision, Chick received a letter from G. S. Jones of the Kerr Steamship Company, agents for shipowner, giving notice of the abandonment of the voyage of the Kokoku Maru due to the damage sustained as a result of the collision. (Exhibit to Chick affidavit).

On June 21, 1963, Chick received a letter from the proctors for Sumitomo which stated in part:

"We observe from Captain Larsen's survey report that the value of the phosphate rock does not justify discharging or forwarding. We confirm advising you this morning that Mr. Tetreault of Graham, James & Rolph sent us a copy of a cable addressed to KAWAKERR SF stating that towage or further voyage of the KOKOKU MARU is out of the question. This, with Captain Larsen's survey, would indicate that the phosphate rock is probably a total loss. If this cargo is to be treated as a total loss, you should have instructions from Tokio regarding its disposition and we understand you are cabling for this now * * *". (Exhibit 2 to Chick affidavit).

According to the affidavit of Chick, the information he received from about June 13, 1963, until about July 9, 1963, from all sources, including a surveyor appointed on behalf of Sumitomo, general average surveyor, Shipowner's Surveyor, counsel for Sumitomo, counsel for Shipowner and Shipowner's agent, was to the following effect: (1) the cost of discharging the cargo or of discharging and forwarding the cargo to its destination was in excess of any possible sales price; (2) there would be no value or purchase price given to the cargo upon the sale of the ship with cargo aboard, and the presence of the cargo aboard the ship might decrease the value of the vessel; (3) the cargo owners or Sumitomo might be charged with additional expenses if the cargo was not discharged by Sumitomo or the cargo owners; and (4) there was no possibility of further voyage or towage of the Kokoku Maru to Japan with

According to the affidavit of Chick, his letter dated July 9, 1963, to the Kerr Steamship Company Inc., agents for the cargo aboard.

shipowner, was based upon this information.

Chick's letter dated July 9, 1963, states in part, "We wish to inform you that we have received advices from the Sumitomo Marine and Fire Insurance Company Limited, Tokyo, to the effect that the Consignees have abandoned the lot of Florida Land Pebble Phosphate Rock shipped under the above Bill of Lading to the vessel and/or her Owners." (Exhibit A to Answer and Opposition of Nippon Shosen Kaisha, filed September 19, 1963).

Enclosed in the Chick letter dated July 9th to Kerr was a letter dated July 1, 1963, from the consignees of the phosphate rock, Sumitomo Shoji Kaisha, Ltd., of Tokyo, Japan, to the Kawasaki Steamship Company concerning the phosphate rock aboard the Kokoku Maru, which states in part:

"Since, we fear, re-shipment to Japan will not be worthwhile in view of the low market value, we should like to have the cargoes disposed of at San Francisco, by sale or abandonment.

"However, we wish to make clear that all risks and expenses in disposing of the cargoes shall be borne by yourselves, or else, be included in General Average expenses * * *."

Also enclosed in the Chick letter to Kerr was a letter from the moving party Sumitomo to its agents, Lloyd's Agency Department, which states in part: "After happenings of the accident, we have been discussing the disposition of the Phosphate Rock with the consignees, Messrs. Sumitomo Shoji Kaisha, Ltd., here and both of us agreed that it is prohibitive to forward the goods to Japan."

The letter further states in part: "Furthermore, we are informed by the assured that the consumer, Nihon Kagaku K.K., are (sic) not willing to use this shipment because crushing down due to extra handling as well as sea water damage made the goods unsuitable for their manufacturing system. We have also studied resale of the goods but found that resale is very difficult now in Japan due to dullness of the market in this line of the goods.

"Under these circumstances, we think there may be the following three methods regarding the disposition at San Francisco: (1) Resale or Public auction after landing, (most advisable if the goods can be sold 'as is, where is' on board). (2) Dumping into the sea. (3) Leave the goods on board without discharging.

"In consideration of the necessary changes, if there is no prospect of being sold at the reasonable price, we have no alternative but to take (3). *And, after discussing, the consignees have informed the Kawasaki Steamship Co., here, that they, as the cargo owner, abandon the cargo without discharging at San Francisco and, therefore, they are not in a position to bear any extra charges to be incurred, if any, which should be borne by the shipowners of ss 'Kokoku M.' and/or of ss 'Asterion'.*" (Emphasis added).

■ Abandonment is the intentional relinquishment of property. 1 C.J.S. Abandonment § 1 (1936). The letter of Chick dated July 9, 1963, with the enclosed letters of Sumitomo and of the consignees of the phosphate rock cargo, clearly evidence the intent and the act sufficient to constitute an intentional relinquishment of all right or interest in the phosphate rock cargo. Id. § 3.

Sumitomo contends that to be legally effective an abandonment must be voluntary, and that the fact that the parties involved, including Sumitomo and its insured, were mistaken as to the value of the cargo rendered the abandonment legally ineffective.

■ However, the fact that the parties were mistaken as to the value of the cargo does not render the abandonment by Sumitomo and its insured any less voluntary. The affidavit of Chick, filed on behalf of Sumitomo, shows that Sumitomo and its insured made their decision to

abandon the cargo only after careful consideration of information provided by those who made investigations on the scene. The fact that such information and/or their conclusion as to the value of the cargo turned out to be in error does not affect the voluntariness of the decision by Sumitomo and its insured to abandon the cargo.

■ Sumitomo correctly points out that one cannot abandon property to a particular person. Id. § 4. One becomes the owner of abandoned property by subsequently appropriating it. Id. § 2. The files and records in the case at bar at present do not reveal any appropriation of the phosphate rock cargo prior to the time when the Trustee, Arimori, acting on behalf of all legally-entitled claimants, listed the cargo in his Notice of Ship Sale. Under this view of the case, therefore, the ownership in the phosphate rock cargo passed directly to the Trustee Arimori, acting on behalf of the legally-entitled claimants. Once abandoned property has been appropriated by another, the former owner who relinquished such property cannot reclaim it. Id. § 9; cf. Wiggins v. 1100 Tons, More or Less, Of Italian Marble, 186 F.Supp. 452 (E.D.Va. 1960).

On the basis of the record presently before the Court, including the affidavits and exhibits filed on behalf of petitioner Sumitomo, the Court concludes that there is no genuine issue of fact with respect to Sumitomo's claim to the $12,467.76 in the registry of the Court representing the proceeds from the sale of the phosphate rock cargo and that the uncontradicted evidence establishes that Sumitomo and its insured abandoned said cargo.

Accordingly, the petition of Sumitomo for the payment from the registry of the Court of the sum of $12,467.76 is hereby denied, said order, however, is without prejudice to the rights of claimants or Shipowner in said proceeds.